IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CIVIL ACTION NO. **98-6408** 

NEIL KEENAN and NEIL KEENAN
& ASSOCIATES, INC.

MAGISTRATE JUDGE
SELTZER

Plaintiffs,

VERIFIED COMPLAINT

AER LINGUS; BRITISH AIRWAYS;
STEPHEN CELICO;
EDWARD F. COAKLEY;
COACH HOUSE GROUP, LTD.;
CONDOR TRADING INTERNATIONAL,
LTD.;  DR. TAPIA CUNILLERA;
MICHAEL CUNNINGHAM;
JOSEPH DONOVAN; DOMINICANA
INTERNATIONAL MARKETING
COMPANY, INC.;  ENTERGY POWER
DEVELOPMENT CORPORATION;
RALPH GROVES;  HARRY HALL;
PETER HEDDERWICK;  RICHARD
JOHANNSON; MARSHALL AEROSPACE;
MICHAEL MARSHALL; MICK MILNE;
CATHAL MULLAN; PETER A. SCHRIMPF;
DANIEL HAROLD SHAW; WORLD
WIDE TRADE ASSOCIATES, INC.,

JURY TRIAL DEMANDED

Defendants.

_____/



Plaintiffs, as and for their Verified Complaint against the Defendants, respectfully

allege as follows:



## JURISDICTION AND VENUE

1.      Count I is a civil action arising under the provisions of Title IX of the Organized Crime Control Act of 1970, 18 U.S.C. 1961-1968, to recover treble damages and the cost of suit, including reasonable attorney's fees, and for injunctive and other relief.

2.      Counts II through VII respectively allege claims for breach of fiduciary duty, common law fraud, breach of contract, tortious inducement to breach a contract of employment or to breach fiduciary duties, conversion, breach of joint venture agreement, tortious interference with beneficial business contracts.

3.      Count VIII alleges violations of the civil rights of Plaintiff Neil Keenan, all in violation of 42 U.S.C. 1982 and 1983 giving original jurisdiction to the United States District Court.

4.      The Defendants acts and practices herein described occurred partly within the Southern District of Florida in that the Defendant ENTERGY, by and through Defendant HALL maintains an office in Broward County, Florida and transacted business through the aforesaid office which were commissions of acts in furtherance of the fraudulent scheme and conspiracy which is the subject of this action. Venue is therefore properly laid in this district pursuant to 18 U.S.C. 1965 (a) and 28 USC 1391.

## THE PARTIES

5.      Plaintiff, NEIL KEENAN (hereinafter referred to as KEENAN) is a businessman, citizen of the United States and resides  in the State of Rhode Island.

6.     Plaintiff, NEIL KEENAN & ASSOCIATES, INC., (hereinafter referred to as NKA), was incorporated in the State of Rhode Island and has dealt in worldwide business transactions involving sugar, cigars, vending machines, commercial jet aircraft, etc.

7.     Defendant, AER LINGUS, is a citizen of the Republic of Ireland, and is based in Dublin, Ireland.

8.     Defendant, BRITISH AIRWAYS, is a citizen of Great Britain and is located at Speedbird House, Heathrow Airport, Hounslow, Middlesex TW6 2JA, United Kingdom.

9.     Defendant, STEPHEN CELICO, (hereinafter referred to as CELICO) is a citizen of the U.S., residing in the state of Rhode Island and was an officer and/or employee of Defendant WORLD WIDE TRADE ASSOCIATES, INC. and owns and operates Atlantic Trade Development Group at 3 Regency Plaza, Executive Office Suites, Providence, Rhode Island 02903.

10.     Defendant, COACH HOUSE GROUP LTD., (hereinafter referred to as COACH HOUSE), is a group of companies owned and operated in part or in whole by the Defendant, CUNNINGHAM, and is a limited share holding group restricted to members of the family of CUNNINGHAM and believed to be another series of entities through which  he converted the business contracts of Plaintiff, NKA, to the use and benefit of Defendant, CUNNINGHAM, and his various companies and holdings, and is

3

located c/o Defendant, CUNNINGHAM, at Main Street, Kirkby Lonsdale, Cumbria LA 62 AQ, United Kingdom.

    11.    Defendant, EDWARD F. COAKLEY, (hereinafter referred to as COAKLEY) is a citizen of the United States, and is President of E. F. Coakley & Associates Inc., 60 State Street, Boston, Massachusetts 02109, and is a partner with Defendant, MICHAEL CUNNINGHAM, individually and as an active member of various entities through which he and Defendant, CUNNINGHAM, engage in projects in the Dominican Republic.

    12.    Defendant, CONDOR TRADING INTERNATIONAL, LTD., (hereinafter referred to as CONDOR) is a citizen of Kirkby Lonsdale, Cumbria, Great Britain and is one of the corporate entities owned and operated by Defendant, CUNNINGHAM, and used as a vehicle for the transfer of Plaintiff, NKA's business contracts.

    13.    Defendant, DR. TAPIA CUNILLERA, (hereinafter referred to as CUNILLERA) is a citizen of the Dominican Republic, and is the sub-secretario de Estado de Interior y Policia, secretaria de Estado de Interior y Policia  Edificio el Huacal, Avenido Mexico, Santo Domingo, Dominican Republic.

    14.    Defendant, MICHAEL CUNNINGHAM, (hereinafter referred to as CUNNINGHAM) is a citizen of Great Britain, a partner in the Defendant, COACH HOUSE GROUP, LTD, and all of its sub-groups, and was actively engaged in the conspiracy hereinafter more specifically set forth, with Defendants, COAKLEY, SHAW, CELICO, JOHANNSON, GROVES, CUNILLERA, and all the various corporate and

4

other business entities herein named, along with others, as more particularly described in succeeding paragraphs, and is located at Main Street, Kirkby Lonsdale, United Kingdom.

15.    Defendant, JOSEPH DONOVAN, (hereinafter referred to as DONOVAN), is a citizen of the Commonwealth of Massachusetts, and is the Assistant Commissioner of Highway Safety, Massachusetts Highway Department, 10 Park Plaza, Boston, Massachusett.

16.    Defendant,    DOMINICANA    INTERNATIONAL    MARKETING COMPANY, INC., commonly referred to as DIMCA (and hereinafter referred to as DIMCA), was a corporation formed in the Dominican Republic by Defendant, SHAW, and Rodolfo Espinal for the purpose of assuming the contracts and business negotiations originally established by the Plaintiff NKA.

17.    Defendant, ENTERGY POWER DEVELOPMENT CORPORATION, (hereinafter referred to as ENTERGY) Division of International Development, 200 East Los Olas Blvd., Suite # 1660, Fort Lauderdale, Florida    33301, is a U.S. corporation registered to do business in the County of Broward, State of Florida and is engaged in the business of international trade and development of electrical power primarily in the Caribbean.

18.    Defendant, RALPH GROVES, III, (hereinafter referred to as GROVES) is a citizen of the United States and resides at 410  Old Boston Neck Road, Narragansett, Rhode Island.

19.     Defendant, HARRY HALL, (hereinafter referred to as HALL) is the director of the division of international development of the Defendant ENTERGY, conducting business on behalf of Defendant ENTERGY at 200 East Los Olas Blvd., Suite #1660, Fort Lauderdale, Florida 33301.

20.     Defendant, PETER HEDDERWICK, (hereinafter referred to as HEDDERWICK), is a citizen of England, located in care of Defendant, MARSHALL AEROSPACE, The Airport, Cambridge, England CB5 8RX.

21.     Defendant, RICHARD JOHANNSON, (hereinafter called JOHANNSON) is a citizen of the United States, residing at 50 Bitgood Road, Ashaway, Rhode Island, and was actively engaged in the conspiracy to circumvent contractual agreements with Plaintiff, NKA, in cooperation with Defendants, SHAW, CUNNINGHAM, and various defendant corporate entities herein named, as more fully set forth in succeeding paragraphs.

22.     Defendant, MARSHALL AEROSPACE, is a citizen of England and is located at The Airport, Cambridge, England CB5 8RX.

23.     Defendant, MICHAEL MARSHALL, is a citizen of England and is located at The Airport, Cambridge, England CB5 8RX.

24.     Defendant, MICK MILNE, (hereinafter referred to as MILNE), is a citizen of the United Kingdom, located in care of Defendant, MARSHALL AEROSPACE, The Airport, Cambridge, England CB5 8RX.

25.     Defendant, CATHAL MULLAN, (hereinafter referred to as MULLAN) is a citizen of the Republic of Ireland, located in care of Defendant, AER LINGUS, at the Head Office, Dublin, Ireland.

26.     Defendant, PETER A. SCHRIMPF, (hereinafter referred to as SCHRIMPF) is a citizen of the United States, upon information and belief a citizen of the State of Arkansas, and is the manager of international business development of Defendant ENTERGY located at 200 E. Las Olas Boulevard, Suite 1660, Fort Lauderdale, Florida 33301.

27.     Defendant, DANIEL SHAW, (hereinafter referred to as SHAW) is a citizen of the U.S. and resides in the Commonwealth of Massachusetts and does business as the entity known as WORLD WIDE TRADE ASSOCIATES, INC., a Defendant herein, and has done business or has direct contacts doing business at his direction in the States of Massachusetts, Rhode Island and Florida. He also holds himself out as doing business in the Dominican Republic, England, Russia and other areas of the world, all affecting the within claim of the Plaintiffs, and is located at 435 Lancaster Street, Suite 312, Leominster, Massachusetts.

28.     Defendant, WORLD WIDE TRADE ASSOCIATES, INC., (hereinafter referred to as WORLD WIDE) is a citizen of Massachusetts, located at 435 Lancaster Street, Suite 312, Leominister, Mass.  01453, and is a company established by the Defendant, SHAW, who is the chief operating officer, and Rodolfo Espinal, for the purpose of engaging in the business of international trade and energy development.

7

29.     On information and belief, various persons and entities not named as Defendants in this Verified Complaint participated as co-conspirators with the named Defendants in the violations alleged herein, and performed acts and made statements in furtherance thereof.

### INTERSTATE AND FOREIGN COMMERCE EFFECTED

30.     Defendants, individually, constitute an enterprise which was ostensibly engaged in or associated in fact with the business of the sale of sugar, cigars, jet aircraft, electric power components, tobacco, etc., which they operated illicitly for the purpose of fraudulently obtaining the profits from such enterprises. Defendants, through trickery and fraud, expropriated the named business contracts from Plaintiffs. Customers for the various products and enterprises are located in various states and countries and such products are transported in the continuous and uninterrupted flow of interstate and foreign commerce.

31.     Defendants, SHAW, CUNNINGHAM, etc., are non-residents of the State of Florida who have regularly transmitted and received checks, letters of credit, wire-transfers, or other monetary instruments drawn on banks located within and without the State of Florida in connection with the aforementioned enterprises and in furtherance of the fraudulent activities which are the subject matter of this action. As a result, a substantial portion of the revenues generated by the Defendants' enterprises were in the flow of interstate and foreign commerce.

32.     Defendants, SHAW and CUNNINGHAM, in the course of their operations regularly transported themselves and/or their employees, officers, agents and associates across state borders and foreign countries by means of interstate and foreign travel. This travel was in aid of the business and of the enterprises identified above and was made with the intent to promote their unlawful activities in violation of F.S. 895.03. Their interstate and foreign travel furthered the fraudulent activities which are the subject matter of this action. Defendants attempted to and/or did perform acts facilitating those unlawful activities in violation of 18 U.S.C. 1952.

33.     Defendants, SHAW and CUNNINGHAM, directly and indirectly used the means and instrumentalities of interstate and foreign commerce in connection with the acts and conduct alleged as the basis for this action and with intent to promote their unlawful activities in violation of F.S. 895.03.  In furtherance thereof, Defendants used or caused the use of the United States Mails and wire communications by transmitting and receiving correspondence in furtherance of the conspiracy a well as checks and documents purporting to be letters of credit or other monetary instruments drawn on banks located within and without the State of Florida and by transferring funds by wire in interstate and foreign commerce.Defendants attempted to and/or did perform acts facilitating the unlawful activities in violation of 18 U.S.C. 1952.

## DEFENDANTS FRAUDULENT ACTIVITIES

34.     Beginning in at least 1994 and continuing thereafter to the present time, the

9

Defendants, SHAW and CUNNINGHAM, together with other named Defendants and other persons known and unknown, with the intent and purpose to inflict direct property loss, financial loss and business opportunity loss or injury on the Plaintiffs, devised a scheme to defraud the Plaintiffs. They conducted their affairs through a pattern of racketeering activity consisting of various acts in violation of interstate and foreign travel in aid of racketeering, and also consisted of other acts of deception and fraud as identified below, including unlawful laundering of money and the violation or evasion of federal currency reporting regulations which require that cash transaction in excess of $10,000.00 be reported to regulatory authorities as well as earnings reported.

A.  The Defendants, SHAW, CUNNINGHAM, and JOHANNSON, with others, did instigate a scheme to convert all transactions and potential transactions originated by Plaintiff NKA, to their own companies or Defendant, DIMCA, their Dominican corporation, in the following manner:

35.    First, Defendant, SHAW, with the assistance of Rodolfo Espinal and Henry Lopez-Penha and Defendant, CUNNINGHAM, did establish DIMCA in breach of their joint venture agreement with Plaintiff NKA, while still actively engaged in pursuing the potential transactions with NKA;

36.    Next, the Defendants, SHAW, CUNNINGHAM, and JOHANNSON, did engage in correspondence and other conduct with members of the United States Parole and Probation Department for the purpose of effecting the arrest and incarceration of Plaintiff, KEENAN, in order to obviate his ability and the ability of Plaintiff, NKA, to

benefit from the previously entered into joint venture agreement with the aforesaid Defendants;

37.     Next, immediately subsequent to Plaintiff, KEENAN's detention, Defendants, SHAW and CUNNINGHAM, with the assistance of co-conspirators, did convert all aspects of KEENAN's ongoing projects to Defendant DIMCA and other corporations;

38.     Those projects and enterprises converted by Defendants resulted in commissions paid to said Defendants in the sum believed to be in excess of $100,000,000.00 US, which sums would have otherwise been paid to Plaintiff NKA;

39.     That the said Defendants then reinvested and continue to reinvest the earnings from said commissions in additional enterprises in an ongoing RICO conspiracy.

B)     In or about February-March 1998 the Defendants, SHAW and CUNNINGHAM, in continuation of the ongoing conspiracy, conspired with Defendant, CUNILLERA, to place drugs in Plaintiff, KEENAN's hotel room in the Dominican Republic or upon his person while said Plaintiff was in the Dominican Republic without the said Plaintiff's knowledge and/or consent,

40.     In or about January 1998 the Sub-Secretary of State of Interior and Police, of the Dominican Republic, Defendant DR. TAPIA CUNILLERA, who is also the attorney for the Defendants, SHAW and CUNNINGHAM, in the Dominican Republic, at the directions of the Defendants, SHAW and CUNNINGHAM, planned to effect the

11

arrest of Plaintiff KEENAN, for the purpose of removing KEENAN and NKA from the completion and benefit of the ongoing transactions.

41.    In or about November-December 1997 Defendant, CUNILLERA, prepared his plan to effect KEENAN's arrest, at which time he revealed to Rodolfo Espinal that he, Dr. CUNILLERA, has the influence and the power on the DNCD, an agency that fights drugs in the Dominican Republic, to plant narcotics in Plaintiff, KEENAN's hotel room in order to effect his arrest.

C) Business Operations in the Dominican Republic

during the years 1993 through 1996.

42.    J. Michael Levesque was brought to the Dominican Republic in 1993 by Plaintiff NEIL KEENAN of NKA for the purpose of being involved in various business opportunities initiated by Plaintiff KEENAN.

43.    These opportunities involved affordable housing projects, an energy production project, a project to place vending machines in hotels and other locations, a project to introduce pay-per-view television to hotels throughout the Dominican Republic, a project to provide computer technology to the Dominican Attorney General's Office and a project involving the Dominican airlines, and various other transactions.

44.    KEENAN opened his circle of friends and associates to Michael Levesque for the purpose of completing some of these aforementioned projects, as well as having Levesque's friends and associates being involved for the purpose of net-working NKA, including Defendants SHAW, JOHANNSON. and foreign associates such as MICHAEL

CUNNINGHAM of Great Britain.

45.     Plaintiff, KEENAN had active partners in the Dominican Republic, namely, Rudolfo Espinal, Henry Lopez-Penha, Ernesto Gonzalez, and later Miguel Sang-Ben. These individuals would conduct business on behalf of NKA.

46.     In or about June 1994 upon KEENAN's detention, Defendant SHAW, took over, with the assistance of Mr. Espinal, and at first, Mr. Lopez-Penha, all aspects of the ongoing projects, as well as any and all of the new projects, including projects which Levesque put forward, such as sources of supply to the U.S. brewery industry.

47.     Through the Defendant SHAWS's direction of the projects there would be active communication between all principals of DIMCA. During this time Defendants SHAW and CUNNINGHAM, had active knowledge of KEENAN's incarceration, and in fact in the case of Defendant SHAW, he had active participation in that process.

48.     Once KEENAN was removed from the process, Defendants SHAW and CUNNINGHAM, clearly directed projects through DIMCA..All information, meetings, conversations, etc., were organized by Mr. Espinal, at Defendant SHAW's direction, who in turn was directed by Defendant CUNNINGHAM.

49.     The main focus of DIMCA's efforts was a three part project involving the privatization of the Dominican airlines, sugar factories and infrastructure projects. For the most part, these projects were initiated much earlier by the Plaintiff, KEENAN.

50.     Plaintiff, KEENAN, had organized a project to export Dominican sugar.

Defendants, SHAW and CUNNINGHAM, without KEENAN's knowledge or consent, completed a sugar contract and enjoyed the fruits of the transaction.

> D.  NKA had an agreement with Defendants, SHAW,
>
> CUNNINGHAM and JOHANNSON, wherein NKA was to be
>
> a 1/3  owner of a project invoving the airline
>
> industry in the Dominican Republic.

51.    In or about August 1994 Defendant, CUNNINGHAM, brought Rodolfo Espinal to England to meet with representatives of Defendants, MARSHALL AEROSPACE, BRITISH AIRWAYS,, AER LINGUS, and others regarding the airline industry in the Dominican Republic.  Defendant, SHAW, and the president of Domincan Airlines were also present.

52.    In or about September 1994 Defendants, CUNNINGHAM and SHAW, and Rodolfo Espinal and others brought Defendants, MARSHALL AEROSPACE, BRITISH AIR, AER LINGUS, and others to the Dominican Republic regarding these transactions, and in addition, to turn Barahoma into an airline hub for the Caribbean without including Plaintiff, NKA.

53.    Defendant, CUNNINGHAM, was considered by this group as their agent and spokesman.  Defendants, CATHAL MULLAN, PETER HEDDERWITK, MICK MILNE, and others known and unknown, representing those airline industry interests, entered the Dominican Republic with Defendant, CUNNINGHAM's group.   Those

14

Defendants knew of Defendants, SHAW and CUNNINGHAM's contractual relationship with Plaintiff, NKA, at the time of said meetings and negotiations.

54.    In or about August 1996 when Plaintiff, KEENAN, was released from detention he filed a legal action against Defendant, CUNNINGHAM, in the Dominican Republic.   CUNNINGHAM immediately went to Juan Guiliani Curry, the former governor of the central bank; subsequently, the matter was referred to to Defendant, TAPIA CUNILLERA, who is the sub-secretary of state.  Together Defendants, SHAW, CUNNINGHAM and CUNILLERA, planned, in or about February and March of 1998, to secrete contraband within the hotel room or luggage of Plaintiff, NEIL KEENAN, for the purpose of attempting to have KEENAN's charges against Defendants, CUNNINGHAM and SHAW, in the Dominican Republic dismissed.

>             E.  The conversion of NEIL KEENAN & ASSOCIATES's
>             business transaction in the Dominican Republic , the United
>             States and other areas throughout the world, by Defendants,
>             SHAW, CUNNINGHAM and JOHANNSON, and their
>             collective effort to have Plaintiff, KEENAN, incarcerated.

55.    Plaintiff, NKA, initially worked with Rodolfo Espinal in the Dominican Republic wherein KEENAN's group would bring the corporations interested in doing business to the Dominican Republic and Espinal would close the deals once they arrived on the island.

56.    In or about August 1993 Plaintiff, KEENAN, introduced Espinal to Defendants, SHAW and JOHANNSON.    Later, SHAW introduced Espinal  to CUNNINGHAM.  In conjunction with creating an airline hub in the Dominican Republic, Defendant, CUNNINGHAM, introduced  Espinal to numerous sources in the airline industry.  At all times relevant, NKA had a vested interest in these projects, together with all other projects.

57.    Defendants, SHAW and CUNNINGHAM, advised Espinal that other individuals including, but not limited to Defendants, STEPHEN CELICO, RALPH GROVES,  RICHARD  JOHANNSON,  JOSEPH  DONOVAN,  and  EDWARD COAKLEY, all co-conspirators actively participating to defraud, Plaintiffs, KEENAN and NKA, would be active and participate in successfully completing the various business enterprises in aid of improving trade and commerce on behalf of  those foreign entities, including the United States of America and the Dominican Republic.

58.    In or about February 1994 Thomas Murphy, President of the Plaintiff, NKA, entered into an agreement with Defendants, SHAW and CUNNINGHAM, in a restaurant in Boston, Massachusetts, called Locke-Ober.  Defendant, SHAW, was invited to this meeting by Plaintiff, NKA, and it was, in fact, the first time that Defendant, SHAW, not only met Defendant, CUNNINGHAM, but also Breith Kelly and Defendant, EDWARD COAKLEY.  The sole reason SHAW met CUNNINGHAM was because the KEENAN group invited him to this meeting.  It was at this meeting that all groups decided to put forth their best efforts, as a joint venture, in order to complete those

16

prospective business transactions in the Dominican Republic, the United States and other areas throughout the world.

59.     After the above-mentioned meeting in Boston, some time in 1994, Defendant, SHAW, began undermining the relationship of the group with Plaintiff, NKA. Defendant, SHAW, sent documents to Espinal advising that Plaintiff, KEENAN, was going to be arrested on drug charges.   He advised Espinal and others to remove themselves as far as possible from Plaintiff, KEENAN.

60.     In or about April or May 1994 Espinal, SHAW, CUNNINGHAM, and others, established a new group, without the knowledge or consent of Plaintiff, NKA, called DIMCA.   The KEENAN group had no idea that these co-conspirators had established DIMCA, and within a short time DIMCA had absorbed all of the transactions related to Plaintiff, NKA.

61.     In or about May or June 1994 Defendant, SHAW, told Espinal he had friends in high places advising him to stay away from KEENAN because the United States Government was going to arrest KEENAN on drug charges.   Because of these representations made by SHAW to Espinal and others those Defendants caused the Domincan corporation called Grunasep, of which NKA was a part, to be dissolved.. That company was comprised of Plaintiff, KEENAN, Henry Lopez-Penha, Rodolfo Espinal and others.   Those Defendants then incorporated DIMCA.   Defendant, SHAW, advised Espinal and others and led them to believe they would all be in trouble if they did not insulate themselves from NKA and KEENAN.

17

62.     In or about May or June 1994 Defendant, SHAW, advised Espinal and Ernesto Gonzales Cedeno, a resident of the Dominican Republic, while at the Sheraton Hotel in Santo Domingo, that he was planning to bring KEENAN and all of his associates down.  Defendant, RICHARD JOHANNSON, who had worked for NKA, after being convinced by Defendants, SHAW and CUNNINGHAM, to betray KEENAN for a substantial share of the profits derived from the various enterprises, assisted SHAW and CUNNINGHAM in having KEENAN incarcerated.  Defendants, SHAW, JOHANNSON and CUNNINGHAM, and Espinal,  unilaterally decided to take this action because they were unhappy with the way Thomas Murphy and NEIL KEENAN were operating NKA and the prospective contract negotiations.

63.     Defendants, SHAW and CUNNINGHAM, informed Espinal that many U.S. Dollars had been paid to them, and would continue to be paid to them as a result of the completion of contracts, none of which was shared with Plaintiff, NKA, thereby intentionally disregarding the rights and claims of Plaintiff, NKA.

64.     From June 1994 to the present, Defendants, CUNNINGHAM, SHAW and JOHANNSON, within a short span of time from KEENAN's imprisonment, stepped up their tortious acts to eliminate KEENAN from any business relationship in the Dominican Republic.  They tampered with his legal problems, and continued to circumvent his associates and contractual agreements throughout the world.

F.   Co-conspirators, SHAW, CUNNINGHAM, and

JOHANNSON, with others, actively participated in

18

a designed plan to cause KEENAN to be incarcerated and further conspire between themselves and others to keep him imprisoned for as long as possible, all in violation of Plaintiff, KEENAN's civil rights, and thereby tortiously breached their contracts with NKA as well as their fiduciary duty to NKA.

65.    The   co-conspirators,   Defendants,   SHAW,   CUNNINGHAM   and JOHANNSON, circumvented the officials and business associates within the Dominican Republic, with whom KEENAN had established a favorable business relationship over the years.  With wanton disregard for the rights of NKA they took advantage of all parties not within their circle and breached their fiduciary duties owed to Plaintiffs.

66.    In   or   about   August   1994,   Defendant,   CUNNINGHAM,   informed Defendant, JOHANNSON, that they, Defendants, SHAW, CUNNINGHAM and JOHANNSON,  had to keep pushing for KEENAN's continued imprisonment because it would facilitate matters for them if KEENAN were to remain in prison. CUNNINGHAM directed JOHANNSON to make an effort to ensure that  KEENAN remained in prison and to have SHAW contact people to accomplish same.  He observed that the conversion of KEENAN's enterprises had not yet been completed.

67.    In exchange for his conduct in aiding in the incarceration of KEENAN, JOHANNSON was given a 20% share of all revenues generated by the contracts converted to Defendants, SHAW and CUNNINGHAM's companies.  Defendant,

19

CUNNINGHAM, informed Defendant, JOHANNSON, that a Brazilian sugar deal had closed, and that they had eliminated KEENAN, Somberg and others, bragging that "it was a nice return for such little risk".

68.    CUNNINGHAM informed JOHANNSON that British authorities had confirmed to him that KEENAN had trouble and that his fate was apparently sealed.  He asserted the first stage of the conspiracy was complete and that they would split the dividends straight away in the islands as planned.

69.    The co-conspirators, SHAW, CUNNINGHAM and JOHANNSON, manipulated United States authorities to implement their plan of imprisoning KEENAN, and to keep him imprisoned for as long a term as possible in violation of KEENAN's civil rights under Title 42, U.S.C. Section 1982-3..

70.    Defendant, CUNNINGHAM, actively sought the influence of British authorities to assist him in causing, Plaintiff, KEENAN, to be incarcerated, in violation of his civil rights under the laws of the United States.

71.    During a period of time from March/April 1995 Defendant, SHAW, in his capacity as President of WORLD WIDE TRADE ASSOCIATES, INC.,corresponded with Defendant, JOHANNSON, wherein SHAW stated that Defendants were close to completing the Dominican Airline deal and that it was imperative that JOHANNSON continue to participate in keeping KEENAN incarcerated.  SHAW urged JOHANNSON to talk to one Michael Ponton, who was aiding the conspirators, to see to it that he and

Ponton had their stories straight" so as to keep KEENAN incarcerated intentionally, all in violation of KEENAN's civil rights.

72.    Defendant, SHAW, in the above referred to letter, informed JOHANNSON that KEENAN's hearing to be released from custody was to take place in April of 1995, urging JOHANNSON to make sure that he was there.  SHAW related to JOHANNSON that "if for some reason KEENAN was released they could kiss the plane, sugar and other deals goodbye".  SHAW ended by saying to JOHANNSON, "do your best to keep him where he is just for a little longer".  Such conduct, on its face, is a gross and outrageous violation of Plaintiff, KEENAN's civil rights.

73.    As a further direct and proximate result of such conduct, damage was done to the standing and reputation of Plaintiffs, KEENAN and NKA, which will take considerable effort and ongoing expense to repair within the business and financial community in which Plaintiffs, KEENAN and NKA, do business and with respect to the public generally.

COUNT I

VIOLATIONS OF THE ORGANIZED CRIME CONTROL ACT OF 1970

74.    The Plaintiffs incorporate herein by this reference, as if fully rewritten and restated herein, the allegations set forth in Paragraphs 1 through 73 above.

75.    Through their scheme to defraud the Plaintiffs, as described above, the Defendants have conspired to engage in and have engaged in a pattern of racketeering activity in violation of 18 U.S.C., Section 1962 (a), (b),(c) and (d).

21

76.    Defendants, SHAW, CUNNINGHAM, JOHANNSON, and others, have received income derived, directly or indirectly, from a pattern of racketeering activity identifed above, have used or invested, directly or indirectly, a portion of such income, or the proceeds of such income, in the establishment or operation of an enterprise which is engaged in, or the activities of which affect, interstate and foreign commerce in violation of 18 U.S.C., Section 1962 (a).

77.    Defendants have been employed by or associated with an enterprise engaged in, or the activities of which affect, interstate and foreign commerce, conducted or participated, directly or indirectly, in the conduct of such enterprises's affairs through a pattern of racketeering activity identified above in violation of 18 U.S.C., Section 1962(c).

78.    Defendants, SHAW, CUNNINGHAM and JOHANNSON, knowingly and willfully conspired to and agreed to engage in the conduct described above, and knowingly performed those acts which they conspired to do, all in violation of 18 U.S.C., Section 1962(d).

79.    By reason of Defendants' violations of 18 U.S.C., Section 1962 (a), (c) and (d), the Plaintiffs have been injured in its business and property in an amount of at least One Hundred Million Dollars ($100,000,000) and are entitled to recover such amount of damages together with treble damages in the amount of at least Three Hundred Million Dollars ($300,000,000), as well as reasonable attorney's fees, and costs incurred. Plaintiffs are further entitled to an Order preliminarily and permanently enjoining and

restraining Defendant, and each person or entity in active concert or participation with them, from impairing or dissipating their respective assets and requiring the Defendants, and each of them, to account for all amounts received directly or indirectly from the various enterprises.

WHEREFORE, Plaintiffs pray for judgment in their favor against all Defenants jointly and severally in compensatory damages of not less than One Hundred Million Dollars ($100,000,000), and punitive damages in an amount three times that granted in compensatory damages.

## COUNT II

## BREACH OF FIDUCIARY DUTY

80.    Plaintiffs incorporate herein by this reference, as if fully rewritten and restated herein, the allegations set forth in Paragraphs 1 through 73 above.

81.    Defendants, SHAW, CUNNINGHAM and JOHANNSON, by reason of their business relationship with Plaintiffs, KEENAN and NKA, owed them fiduciary duties.

82.    The acts and transactions set forth above in which Defendants, SHAW, CUNNINGHAM and JOHANNSON participated, aided, abetted, or assisted, are the breach by them of the fiduciary duties owed by them to Plaintiffs, KEENAN and NKA.

83.    As a direct and proximate result of the breach by SHAW, CUNNINGHAM and JOHANNSON, of the fiduciary duties owed by them to Plaintiffs, KEENAN and

23

NKA, Plaintiffs have sustained an actual pecuniary loss of at least One Hundred Million Dollars ($100.000,000).

84.     As a further direct and proximate result of the breach by Defendants, SHAW, CUNNINGHAM and JOHANNSON, of the duties owed by them to Plaintiffs, KEENAN and NKA, and of the conduct in which SHAW, CUNNINGHAM and JOHANNSON participated, aided, abetted and assisted, Plaintiffs are entitled to recover punitive damages in the amount of at least One Hundred Million Dollars ($100,000,000).

WHEREFORE, Plaintiffs pray for judgment in their favor against all Defendants jointly and severally in compensatory damages of not less than One Hundred Million Dollars ($100,000,000) and punitive damages of not less than One Hundred Million Dollars ($100,000,000).

## COUNT III

## COMMON LAW FRAUD

85.     Plaintiffs incorporate herein by this reference, as if fully rewritten and restated herein, the allegations set forth in Paragraphs 1 through 73 above.

86.     The acts and transactions of Defendants set forth above constitute the common law tort of fraud.

87.     As a direct and proximate result of Defendants' tortious and fraudulent acts and practices, Plaintiffs are entitled to:

(a)     a decree imposing a constructive trust on the respective assets of the Defendants;

24

(b)    the actual and pecuniary loss sustained by Plaintiffs in the amount of at least One Hundred Million Dollars ($100,000,000).

88.    As a further direct and proximate result of the Defendants' fraudulent activities and course of illegal and fraudulent patterns of conduct set forth above, Plaintiffs are entitled to recover punitive damages in an amount no less than One Hundred Million Dollars ($100,000,000).

WHEREFORE, Plaintiffs pray for judgment in their favor against all Defendants jointly and severally in compensatory damages of not less than One Hundred Million Dollars ($100,000,000) and punitive damages of not less than One Hundred Million Dollars ($100,000,000).

## COUNT IV

## BREACH OF CONTRACT

89.    Plaintiffs incorporate herein by this reference, as if fully rewritten and restated herein, the allegations set forth in Paragraphs 1 through 73 above.

90.    Defendants, SHAW, CUNNINGHAM and JOHANNSON, by reason of their business relationships with Plaintiffs, owed Plaintiffs duties and obligations.

91.    The acts and transactions set forth above in which said Defendants participated, aided, abetted or assisted, are the breach by said Defendants of the duties and obligations owed by them to Plaintiffs.

25

92.    As a direct and proximate result of the breach by said Defendants of the duties and obligations owed by them to Plaintiffs, the Plaintiffs sustained an actual pecuniary loss of at least One Hundred Million Dollars ($100,000,000).

WHEREFORE, Plaintiffs pray for judgment in their favor against all Defendants jointly and severally in compensatory damages of not less than One Hundred Million Dollars  ($100,000,000) and punitive damages of not less than One Hundred Million Dollars ($100,000,000)

## COUNT V

### TORTIOUS INDUCEMENT TO BREACH CONTRACT AND BREACH OF FIDUCIARY DUTIES

93.    Plaintiffs incorporate herein by this reference, as if fully rewritten and restated herein, the allegations set forth in Paragraphs 1 through 73 above.

94.    In or about August 1996 Plaintiff, KEENAN, discovered that Defendants, CUNNINGHAM and SHAW, brought Defendants, DONOVAN, MILNE, MARSHALL and HEDDERWICK, as representatives of Defendant, MARSHALL AEROSPACE, and Defendant, MULLEN, as representative of Defenant, AER LINGUS, and representatives of Defendant, BRITISH AIRWAYS, to the Dominican Republic for meetings and discussions with representatives of Dominican Airlines, to establish an international hub for airlines in the Dominican Republic.  Defendants, SHAW, CUNNINGHAM, and DONOVAN, knew that Plaintiffs, KEENAN and NKA, had been negotiating with

26

Dominican Airlines on this project, and the actions of the Defendants were in direct interference with the joint venture agreement hereinbefore referred to.

95.     Plaintiffs further incorporate herein by this reference, as if fully rewritten and restated herein, the allegations set forth in Paragraphs 80 through 84 and 89 through 92 above.

96.     The Defendants named in Paragraph 94, acting individually, jointly and collectively with their respective corporate entities, willfully, knowingly or recklessly induced Plaintiffs' business contacts to engage in the acts and transactions set forth above, and thereby willfuly, knowingly or recklessly induced Plaintiffs' business contacts to breach the fiduciary duties owed by them to Plaintiffs.

97.     As a direct and proximate result of such conduct on the part of the Defendants referred to in Paragraph 94, Plaintiffs have sustained an actual pecuniary loss of at least One Hundred  Million Dollars ($100,000,000).

99.     As a further direct and proximate result of such conduct on the part of Defendants named in Paragraph 94, Plaintiffs are entitled to recover punitive damges in an amount of not less than One Hundred Million Dollars ($100,000,000).

WHEREFORE, Plaintiffs pray for judgment in their favor against all Defendants jointly and severally in compensatory damages of not less than One Hundred Million Dollars ($100,000,000) and punitive damages of not less than One Hundred Million Dollars ($100,000,000)

## COUNT VI

## CONVERSION

100. Plaintiffs incorporate herein by this reference, as if fully rewritten and restated herein, the allegations set forth in Paragraphs 1 through 73 above.

101. Defendants, SHAW, CUNNINGHAM and JOHANNSON, without the consent of Plaintiffs, have received funds of the Plaintiffs or have received the benefit of funds of the Plaintiffs, in an amount in excess of One Hundred  Million Dollars ($100,000,000).

102. At the time that Defendants, referred to in Paragraph 110, received such funds of Plaintiffs, or the benefit of such funds, they did so with the intent and purpose of permanently and fraudulently depriving Plaintiffs of such funds.

103. As a direct and proximate result of the acts by the Defendants referred to in Paragraph 100, Plaintiffs' funds have been converted and Plaintiffs have been damaged in an amount in excess of One Hundred Million Dollars ($100,000,000).

104. By reason of the willful, wanton and unlawful nature of the aforesaid acts of Defendants, SHAW, CUNNINGHAM and JOHANNSON, Plaintiffs are further entitled to recover punitive damages from such Defendants in an amount not less than One Hundred Million Dollars ($100,000,000).

WHEREFORE, Plaintiffs pray for judgment in their favor against all Defendants jointly and severally in compensatory damages of not less than One Hundred Million

28

Dollars ($100,000,000) and punitive damages of not less than One Hundred Million Dollars ($100,000,000).

COUNT VII

BREACH OF JOINT VENTURE AGREEMENT

105.   Plaintiffs incorporate herein by this reference, as if fully rewritten and restated herein, the allegations set forth in Paragraphs 1 through 73 above.

106.   By virtue of the Joint Venture Agreement, the implementation of that agreement and by their conduct in circumventing the business enterprises of such joint venture, the Defendants, SHAW, CUNNINGHAM and JOHANNSON, are jointly and severally liable to the Plaintiffs for the commissions earned as a result of completion of the joint venture business transactions.

WHEREFORE, Plaintiffs pray for judgment in their favor against all Defendants jointly and severally in compensatory damages of not less than One Hundred Million Dollars ($100,000,000) and punitive damages of not less than One Hundred Million Dollars ($100,000,000).

COUNT VIII

VIOLATION OF PLAINTIFF, NEIL KEENAN'S CIVIL RIGHTS

107.   Plaintiff, NEIL KEENAN, incorporates herein by this reference, as if fully rewritten and restated herein, the allegations set forth in Paragraphs 1 through 73 above.

108.   Defendants, SHAW, CUNNINGHAM and JOHANNSON, together with other persons known and unknown, with the intent and purpose to inflict loss of liberty

29

upon Plaintiff, NEIL KEENAN, willfully, wantonly and maliciously planned, acted upon and carried out a fraudulent scheme, the purpose of which was to cause Plaintiff KEENAN to be imprisoned in violation of his civil rights under 42 U.S.C., Section 1983.

WHEREFORE, Plaintiff, NEIL KEENAN, prays for judgment in his favor against all Defendants jointly and severally in compensatory damages of not less than One Hundred Million Dollars ($100,000,000) and punitive damages of not less than One Hundred Million Dollars ($100,000,000).

## DEMAND FOR JURY TRIAL

Pursuant to the provisions of Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs, through counsel, hereby demand a trial by jury on all claims raised in their verified complaint.

> SHELDON GOLDING, P.A.
> Attorney for Plaintiffs
> 800 S.E. 3 Avenue, Suite 300
> Fort Lauderdale, Florida 33316
> Telephone: (954) 763-2122
> Facsimile: (954) 462-0128
>
>
> By: _____
> SHELDON GOLDING
> Florida Bar No. 137191

30

VERIFICATION

**STATE OF RHODE ISLAND**

**COUNTY OF PROVIDENCE**

    **BEFORE ME, the undersigned Notary Public, personally appeared Neil Keenan, who after being duly sworn, deposes and states the following:**

    **That he is Chairman of the Board of Directors of the Plaintiff, Neil Keenan & Associates, Inc., herein, and the Individual Plaintiff, Neil Keenan herein; that he has read the foregoing complaint and knows the contents thereof, and that the allegations contained therein are true and correct, to the best of his knowledge and belief, and that he has executed said complaint for the purposes therein expressed.**

                                  NEIL KEENAN, Individually and as CEO of
                                    NEIL KEENAN & ASSOCIATES, INC.

**SWORN TO AND SUBSCRIBED TO BEFORE  ME THIS** 30th **DAY OF APRIL, 1998.**

                                    SIGNATURE OF NOTARY PUBLIC

                                    SHELDON GOLDING, P.A.
                                    ATTORNEY FOR PLAINTIFFS
                                    800 S.E. 3RD AVENUE, SUITE 300
                                    FORT LAUDERDALE, FLORIDA 33316
                                    TELEPHONE: (954)-763-2122

BY:                         
              SHELDON GOLDING
              FLORIDA BAR NO. 137191

JS 44
(Rev. 12/96)

CIVIL COVER SHEET  98-6408  CIV-ZLOCH

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I.(a) PLAINTIFFS**

KEENAN, NEIL and NEIL KEENAN & ASSOCIATES, INC.

**DEFENDANTS**

AER LINGUS, et al.

**(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF    Providence, Rhode Island
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT   Republic of Ireland
(IN U.S. PLAINTIFF CASES ONLY)
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

A-NORTH -6408 ZLOCH / BSS

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)
Sheldon Golding, P.A.
800 SE 3 Avenue, #300
Ft. Lauderdale FL 33316

954-763-2122

ATTORNEYS (IF KNOWN)
unknown at this time

**(d)** CIRCLE COUNTY WHERE ACTION AROSE:  DADE,  MONROE,  (BROWARD),  PALM BEACH,  MARTIN,  ST. LUCIE,  INDIAN RIVER,  OKEECHOBEE HIGHLANDS

| **II. BASIS OF JURISDICTION** (PLACE AN "X" IN ONE BOX ONLY) | **III. CITIZENSHIP OF PRINCIPAL PARTIES** (PLACE AN "X" IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) (For Diversity Cases Only) |
|---|---|

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| ☐ 1 U.S. Government Plaintiff | ☒ 3 Federal Question (U.S. Government Not a Party) | Citizen of This State ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| ☐ 2 U.S. Government Defendant | ☐ 4 Diversity (Indicate Citizenship of Parties in Item III) | Citizen of Another State ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| | | Citizen or Subject of a Foreign Country ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (PLACE AN "X" IN ONE BOX ONLY)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify)   ☐ 6 Multidistrict Litigation   ☐ 7 Appeal to District Judge from Magistrate Judgment

**V. NATURE OF SUIT** (PLACE AN "X" IN ONE BOX ONLY)

| A CONTRACT | A TORTS | | FORFEITURE/PENALTY | A BANKRUPTCY | A OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | B☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury — Med. Malpractice | B☐ 620 Other Food & Drug | | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | | B☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 423 Withdrawal 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 365 Personal Injury — Product Liability | | | B☐ 450 Commerce/ICC Rates/etc. |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers Liability | ☐ 368 Asbestos Personal Injury Product Liability | B☐ 630 Liquor Laws | **A PROPERTY RIGHTS** | ☐ 460 Deportation |
| B☐ 151 Medicare Act | | | B☐ 640 R.R. & Truck | ☐ 820 Copyrights | X☒ 470 Racketeer Influenced and Corrupt Organizations |
| B☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine | **PERSONAL PROPERTY** | B☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 810 Selective Service |
| | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | B☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 850 Securities/Commodities/ Exchange |
| B☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | B☐ 690 Other | **B SOCIAL SECURITY** | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **A LABOR** | ☐ 861 HIA (1395ff) | ☐ 891 Agricultural Acts |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 862 Black Lung (923) | ☐ 892 Economic Stabilization Act |
| ☐ 195 Contract Product Liability | | | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 893 Environmental Matters |
| | | | | ☐ 864 SSID Title XVI | ☐ 894 Energy Allocation Act |
| **A REAL PROPERTY** | **A CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | B☐ 510 Motions to Vacate Sentence | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| B☐ 220 Foreclosure | ☐ 442 Employment | **HABEAS CORPUS:** | | A☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations | B☐ 530 General | ☐ 790 Other Labor Litigation | | ☐ 890 Other Statutory Actions |
| ☐ 240 Torts to Land | ☐ 444 Welfare | A☐ 535 Death Penalty | | A☐ 871 IRS — Third Party 26 USC 7609 | A OR B |
| ☐ 245 Tort Product Liability | ☐ 440 Other Civil Rights | B☐ 540 Mandamus & Other | A☐ 791 Empl. Ret. Inc. Security Act | | |
| ☐ 290 All Other Real Property | | B☐ 550 Civil Rights | | | |
| | | B☐ 555 Prison Condition | | | |

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE BRIEF STATEMENT OF CAUSE. DO NOT CITE JURISDICTIONAL STATUTES UNLESS DIVERSITY)   Title 18 USC 1961-8 claiming RICO by way of breach of joint venture agreement, breach of fiduciary duty, fraud/conversion and causing of plaintiff, Keenan to be incarcerated in order to carry out the common scheme

LENGTH OF TRIAL via ___ days estimated to try entire case)

**VII. REQUESTED IN COMPLAINT:**  CHECK IF THIS IS A **CLASS ACTION** ☐ UNDER F.R.C.P. 23    DEMAND $100 million  CHECK YES only if demanded in complaint:  **JURY DEMAND:** ☒ YES  ☐ NO

**VIII. RELATED CASE(S)** (See instructions) **IF ANY**   none    JUDGE ___   DOCKET NUMBER ___

DATE  4/23/98

SIGNATURE OF ATTORNEY OF RECORD   Sheldon Golding

FOR OFFICE USE ONLY

RECEIPT # 513531   AMOUNT 150.00   APPLYING IFP ___   JUDGE ___   MAG. JUDGE ___
4/23/98